# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

MEDASSETS, INC.,

       Plaintiff,

v.

FEDERAL INSURANCE
COMPANY,

       Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.
1:08-CV-2640-RWS

## <u>ORDER</u>

This case comes before the Court on Plaintiff's Motion for Summary

Judgment on the Issue of Defendant's Duty to Defend [54], Defendant's Motion

for Summary Judgment on Claims under the E&O Policy [57], Defendant's

Motion for Summary Judgment on Claims under the D&O Policy [58],

Plaintiff's Motion to Compel Production of Documents [24], Defendant's

Motion for Protective Order [30], Plaintiff's Motion to Compel Depositions

[29-1], Plaintiff's Motion for Sanctions [29-2], Defendant's Motion to Quash

[40-1], Defendant's Motion for Protective Order [40-2], Plaintiff's Motion for

Judicial Notice [52], and Plaintiff's Motions for Leave to Correct Rule 56(f)

Affidavits [83, 84].  After reviewing the record, the Court enters the following Order.

## Background

Defendant Federal Insurance Company ("Federal") issued two insurance policies to Plaintiff MedAssets, Inc. ("MedAssets"), the D&O Policy (policy number 8170-4425) and the E&O Policy (policy number 7499-71-83-DAL). (Plaintiff's Statement of Undisputed Material Facts ("Pl.'s Facts"), Dkt. No. [55] at ¶¶ 7, 15).  This case concerns whether Defendant had a duty to defend Plaintiff under either policy for a suit brought against it by third parties.

MedAssets works with healthcare providers to implement strategies to improve financial strength and operational efficiency.  (Id. at ¶ 1).  Aspen Healthcare Metrics, LLC ("Aspen") is a wholly-owned subsidiary of MedAssets that assists medical organizations such as hospitals in reducing the price they pay for medical products.  (Id. at ¶ 3).  As part of this effort, Aspen may obtain historical purchasing data from hospitals relating to particular devices and advise the organizations as to the optimal price to pay for a device and assist the organization in procuring and purchasing medical devices from vendors.  (Id. at ¶ 4).

AO 72A
(Rev.8/82)

On August 9, 2004, Cardiac Pacemaker, Inc. ("CPI") and Guidant Sales Corporation ("GSC") filed a lawsuit against Aspen Holding Company, Inc., d/b/a Aspen Healthcare Metrics in the District Court for the Second Judicial District of Minnesota entitled <u>Cardiac Pacemakers, Inc. et al. v. Aspen II Holding Co. d/b/a Aspen Healthcare Metrics</u>, C8-04-8081 (the "Guidant lawsuit"). (<u>Id.</u> at ¶ 24). CPI develops and manufactures medical devices. (Guidant Complaint, Ex. C to Pl.'s Complaint, Dkt. No. [1-5] at ¶ 4). GSC has contracts with hospitals, medical centers, and others to sell CPI products. (<u>Id.</u> at ¶ 7). The Guidant lawsuit alleged that GSC did not have uniform prices for CPI's products, but rather pricing was client specific, and "[t]he pricing information contained in Guidant Sales' proposals and contracts is confidential between Guidant Sales and its customer." (<u>Id.</u> at ¶ 8). GSC also alleged that its "pricing information is a trade secret, which Guidant Sales takes reasonable measures to protect." (<u>Id.</u>). The Guidant lawsuit alleged that Aspen induced some of GSC's customers to share this confidential pricing information with Aspen. Specifically, the lawsuit alleges four causes of action against Aspen: Count I - tortious interference in inducing the breach of a confidentiality agreement; Count II - tortious interference in inducing the breach of a contract;

3

Count III - tortious interference with prospective contractual relations; and Count IV - misappropriation of trade secrets. (Id.).

As the basis for Count I, GSC claimed that "Aspen has tortiously interfered with the contracts between [GSC and its customers]. . . . Aspen intentionally induced [GSC's customers] to breach the confidentiality provisions in their contracts by obtaining the contracts' pricing information from them." (Id. at ¶ 34). Count II alleges that "Aspen, through its misappropriation, misuse and disclosure of [GSC's] confidential pricing information, and through other wrongful means, has tortiously interfered with . . . contracts between [GSC] and customers which purchase CPI's products from [GSC], by inducing such customers to breach existing contracts with [GSC]." (Id. at ¶ 40). Count III alleges that "Aspen, through its misappropriation, misuse and disclosure of [GSC's] confidential pricing information, and through other wrongful means, has tortiously interfered with [GSC's] prospective contractual relations with . . ." customers. (Id. at ¶ 44). In Count IV, GSC alleged that Aspen violated the Minnesota Uniform Trade Secrets Act "[b]y misappropriating [GSC's] confidential pricing information to the detriment of plaintiffs, and by disclosing [GSC's] confidential information to third parties . . . . ." (Id. at ¶ 50).

4

Aspen Healthcare Metrics, LLC ("Aspen LLC") denied liability for the causes of action asserted in the Guidant lawsuit and in support of its counterclaim against the Guidant plaintiffs contended that certain pricing information GSC claimed was a trade secret was disclosed to third-parties by GSC. (Pl.'s Facts, Dkt. No. [55] at ¶ 25). The Guidant lawsuit was removed to the United States District Court for the District of Minnesota on September 8, 2004. (Id. at ¶ 26).

A copy of the Guidant lawsuit was sent to Federal on August 13, 2004. (Pl.'s Facts, Dkt. No. [55] at ¶ 30). On August 25, 2004, Federal sent Plaintiff a letter denying coverage under the E&O Policy. (Ex. 6 to Pl.'s Facts, Dkt. No. [55-10]). The E&O Policy establishes when "Coverage" exists:

> Subject to all terms and conditions of this insurance, we will pay damages that the insured becomes legally obligated to pay for any **claim**[1] arising out of a negligent act, error or omission to which this insurance applies, by or on behalf of the **insured**
>
> - in the performance of or failure to perform **healthcare product services, or**
>
> - resulting in the failure of **your healthcare products** to perform the function or serve the purpose intended

---

[1] Claim is defined as "a demand for damages by a customer." (E&O Policy, Ex. B-1 to Complaint, Dkt. No. [1-4], Form 80-02-2087 at 17).

5

. . .

(E&O Policy, Ex. B-1 to Complaint, Dkt. No. [1-4], Form 80-02-2087 at 3

(emphasis in original)).  In part, the August 25 letter from Defendant states:

> There are no allegations of a negligent act, error or
> omission in the performance of or failure to perform
> healthcare product services.  Nor are there any
> allegations of a negligent act, error or omission
> resulting in the failure of your healthcare products to
> perform the function or serve the purpose intended.
> Therefore coverage will not apply under the [E&O
> Policy].  The Intellectual Property Laws or Rights
> exclusion will apply to further preclude coverage.
> Due to the nature of the allegations, the Antitrust And
> Restraint Of Trade, Expected or Intended Injury and
> Willful Violation of Law Or Regulation exclusions
> may also apply to preclude coverage.
>
> In view of the foregoing, [Federal] will neither defend
> nor indemnify [Aspen] . . . .
>
> [Federal] reserves its rights under the policies and
> applicable law to cite additional applicable policy
> provisions as may be appropriate.

(Ex. 6 to Pl.'s Facts, Dkt. No. [55-10] at 7).  Federal closed the E&O claim file

on September 29, 2004.  (Pl.'s Facts, Dkt. No. [55] at ¶ 32).

On August 19, 2004, Federal acknowledged that it was investigating

coverage for the Guidant lawsuit under the D&O Policy under a reservation of

rights.  (Id. at ¶ 34).  On August 26, 2004, Federal sent a letter to Plaintiff

6

denying that coverage existed for the Guidant lawsuit under the D&O Policy

and therefore refused to defend Aspen LLC in that action. (Ex. G to Complaint,

Dkt. No. [1-9]). The letter states in relevant part:

> [C]ertain Policy Provisions set forth below operate to preclude coverage for this matter. Specifically, Policy Paragraph IIIC(7) provides that no coverage will be available under **Insuring Clause (C)** for any **Insured Organization Claim**[2]:
>
>> (7) based upon, arising from, or in consequence of any actual or alleged infringement of copyright, patent trademark, trade name, trade dress, service mark or misappropriation of ideas or trade secrets;[3]
>
> The allegations of the Complaint at issue are based upon Aspen's alleged misappropriation of confidential pricing information obtained from entities which entered into confidential contracts with plaintiffs. Plaintiffs allege that Aspen induced these entities to breach their contracts with plaintiffs in obtaining such trade secret information from them. The allegations of plaintiffs' complaint, including the allegations of inducing breach of contract and interference with prospective contractual relations are

---

[2] The D&O Policy defines "Insured Organization Claim" in relevant part to mean, "a civil proceeding commenced by the service of a complaint or a similar pleading." (D&O Policy, Ex. A to Complaint, Dkt. No. [1-2], Form 14-02-3796 at 4 of 10).

[3] Paragraph IIIC(7) is found in the D&O Policy, on Form 14-02-3796 at 8 . (Ex. A to Complaint, Dkt. No. [1-2]).

AO 72A
(Rev.8/82)

> based upon Aspen's alleged misappropriation of trade
> secrets[.]

(Id. at 2-3 (emphasis in original)).  Federal closed the D&O claim file on

September 15, 2004.  (Pl.'s Facts, Dkt. No. [55] at ¶ 37).

   Plaintiff asserts that after Federal denied coverage under the E&O and

D&O Policies, MedAssets' insurance broker had a number of communications

with Federal expressing concern that Federal was denying coverage based upon

the allegations contained in the Guidant lawsuit without considering additional

facts, such as Plaintiff's denial of any intentional wrongdoing.  (Id. at ¶ 38).  On

November 5, 2004, representatives of MedAssets met with representatives of

Federal to discuss the denial of coverage.  (Id. at ¶ 39).  At the meeting,

MedAssets' chief legal officer told Federal that the allegations in the Guidant

lawsuit were not true and that it was not based upon the misappropriation of

trade secrets.  (Id. at ¶ 40).  Federal reiterated its position to deny coverage.  (Id.

at ¶ 41).

   On March 20, 2006, the Minnesota District Court granted the Guidant

plaintiffs' motion to voluntarily dismiss Counts II-IV in the Guidant lawsuit

without prejudice.  (Id. at ¶ 28).  Plaintiff reached a compromise settlement with

the Guidant plaintiffs in May 2006, and the case was dismissed.  (Id. at ¶ 29).

The parties dispute whether Federal was ever notified of the dismissal of Counts II-IV in the Guidant lawsuit or whether this dismissal in March 2006 had any impact on Federal's duty to defend the suit.

## Discussion

### I.      Motions for Summary Judgment

Plaintiff has filed a Motion for Summary Judgment [54]  seeking an order declaring that as a matter of law Federal had a duty to defend under both the E&O and D&O Policy.  Defendant has filed two Motions for Summary Judgment [57, 58] asserting that it had no duty to defend Plaintiffs under either the E&O or D&O Policy.

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"

9

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986) (internal quotations omitted)).  Where the moving party makes

such a showing, the burden shifts to the non-movant, who must go beyond the

pleadings and present affirmative evidence to show that a genuine issue of

material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257,

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist.  Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."  Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004).

A.    Duty to Defend under the E&O Policy

Defendant argues that the E&O Policy did not cover the Guidant lawsuit because the insuring clause[4] was not triggered for three reasons: (1) neither CPI

_____

[4] The E&O Policy establishes that "Coverage" exists:
> Subject to all terms and conditions of this insurance, we will pay damages that the insured becomes legally obligated to pay for any **claim** arising out of a negligent act, error or omission to which this insurance applies, by

nor GSC, plaintiffs in the Guidant lawsuit, are customers of the insured and

therefore the Guidant lawsuit is not a claim, as defined by the policy; (2) the

Guidant complaint does not allege a negligent act, error or omission by or on

behalf of the insured; and (3) the Guidant lawsuit does not seek damages based

upon the insured's performance of or failure to perform healthcare product

services, or as the result of any failure of "your healthcare products."  (Def.'s

Brief in Support of Summary Judgment on the E&O Policy, Dkt. No. [57-3] at

5-6).

      The E&O policy defines "claim" as "a demand for damages by a

customer."  (E&O Policy, Ex. B-1 to Complaint, Dkt. No. [1-4], Form 80-02-

2087 at 17).  Defendant argues that since coverage exists for "any claim," and a

"claim" is defined as "a demand for damages by a customer," and neither CPI

nor GSC are customers of Plaintiff, no duty to defend arose under the policy.

Plaintiff contests Federal's rationale, arguing that:

---

     or on behalf of the **insured**
-    in the performance of or failure to perform **healthcare product services, or**
-    resulting in the failure of **your healthcare products** to perform the function or serve the purpose intended

    . . .

(E&O Policy, Ex. B-1 to Complaint, Dkt. No. [1-4], Form 80-02-2087 at 3 (emphasis in original))

> the term "Claim" could very easily be interpreted to
> mean a "customer" of MedAssets' hospital clients,
> rather than a direct customer of MedAssets. If so,
> then the Guidant lawsuit would constitute a claim if
> the term "customer" is defined as "a person [or entity]
> with whom a business house, or business man, has
> regular or repeated dealings" because the hospitals
> (who were clients of MedAssets) as well as
> MedAssets and Aspen themselves, had regular
> dealings with vendors such as the Guidant plaintiffs.
> See generally Nichols v. Ocean Acc. & Guar. Corp.,
> [70 Ga. App. 169, 27 S.E.2d 764, 767 (1943)]
> (discussing traditional definitions of the term
> "customer").

(Pl.'s Response to Def.'s Summary Judgment Motion on the E&O Policy, Dkt.

No. [71] at 9). However, this argument is unavailing.

The law of Georgia dictates that:

> Construction of an insurance policy is governed by
> the ordinary rules of contract construction, and when
> the terms of a written contract are clear and
> unambiguous, the court is to look to the contract alone
> to find the parties' intent. However, if a provision of
> an insurance contract is susceptible of two or more
> constructions, even when the multiple constructions
> are all logical and reasonable, it is ambiguous, and the
> statutory rules of contract construction will be
> applied. The proper construction of a contract, and
> whether the contract is ambiguous, are questions of
> law for the court to decide.

Ins. Co. of Penn. v. APAC-Se., Inc., 297 Ga. App. 553, 557, 677 S.E.2d 734,

738 (2009) (citations omitted). In this case, "the provisions of the policy of

insurance must be determined by the ordinary and usual meaning given the word 'customer.'" <u>Nichols</u>, 70 Ga. App. 169, 27 S.E.2d at 767. Plaintiff cites to a portion of one definition of "customer" set forth in <u>Nichols</u>. That definition in its entirety states: "A buyer, purchaser, or patron; a person with whom a business house, or a business man, has regular or repeated dealings." <u>Id.</u> The other definition of "customer" referenced in <u>Nichols</u> is "one who regularly, customarily, or repeatedly makes purchases of, or has business dealings with a tradesman or business establishment; a buyer or purchaser; a patron."

Even if the Court were to accept Plaintiff's argument that the manner of the use of "customer" in the E&O Policy and the intention of the parties was that "customer" refer to customers of Plaintiff's customers, CPI and GSC would still not fall within the scope of "customer." The Guidant plaintiffs were not customers, in the ordinary and usual meaning of the word, but rather, like Plaintiffs, are vendors. Plaintiff and the Guidant plaintiffs may have medical organizations as mutual customers, but neither in regards to the Guidant lawsuit is a customer of the other. The alternative construction that Plaintiffs ascribe to "customer" is not reasonable, and therefore the contract is unambiguous in this regard. Even if the term "customer" could be deemed ambiguous, the Court of Appeals of Georgia has noted that

14

> while ambiguities in insurance contracts are to be construed against the insurer, we are not to call forth doubt or make hypercritical constructions. The natural, obvious meaning is to be preferred over any curious, hidden meaning which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover. The language of the contract in its entirety should be given a reasonable construction, not beyond that fairly intended within its terms.

Manzi v. Cotton States Ins. Co., 243 Ga. App. 277, 280, 531 S.E.2d 164, 166 (2000). The term cannot be contorted to bring the Guidant plaintiffs within its intended meaning. Therefore, because the Guidant lawsuit was not "a demand for damages by a customer," it was not a "claim" covered by the E&O Policy.

The Court need not address Defendant's remaining arguments for why the E&O Policy does not cover the claims set forth in the Guidant lawsuit. Defendant's Motion for Summary Judgment on Claims under the E&O Policy [57] is **GRANTED**, and Plaintiff's Motion for Summary Judgment on the Issue of Defendant's Duty to Defend [54] is **DENIED**, as to the duty to defend under the E&O Policy.

    B.    <u>Duty to Defend under the D&O Policy</u>

In its letter to Plaintiff denying coverage for the Guidant lawsuit under the D&O Policy, Defendant stated that paragraph IIIC(7) of the D&O Policy

excluded coverage. That paragraph states that "[n]o coverage will be available under Insuring Clause (C) for any **Insured Organization Claim** . . . based upon, arising from, or in consequence of any actual or alleged . . . misappropriation of ideas or trade secrets." In denying coverage, Federal stated that:

> The allegations of the Complaint at issue are based upon Aspen's alleged misappropriation of confidential pricing information obtained from entities which entered into confidential contracts with plaintiffs. Plaintiffs allege that Aspen induced these entities to breach their contracts with plaintiffs in obtaining such trade secret information from them. The allegations of plaintiffs' complaint, including the allegations of inducing breach of contract and interference with prospective contractual relations are based upon Aspen's alleged misappropriation of trade secrets[.]

(Ex. G to Complaint, Dkt. No. [1-9] at 3).

In its Motion for Summary Judgment, Defendant asserts that it had no duty to defend based on the D&O Policy provision excluding coverage for claims arising from an alleged misappropriation of trade secrets. Defendant also asserts it had no duty to defend because Aspen II Holding Company ("Aspen II") named in the Guidant lawsuit was not a subsidiary of Plaintiff and, therefore, not an insured under the D&O Policy. Plaintiff argues that Defendant

AO 72A
(Rev.8/82)

had a duty to defend because only one of four counts in the Guidant lawsuit was based upon the misappropriation of trade secrets (Count IV), the allegations associated with that count were false, and Defendant, at a minimum, had an obligation to investigate those allegations before denying coverage.

> An insurer's duty to defend is determined by comparing the allegations of the complaint with the provisions of the policy. Where a policy imposes a duty to defend even if the allegations are groundless, false or fraudulent, courts look to the allegations of the complaint to determine whether a liability covered by the policy **is asserted**. Thus, an insurer is obligated to defend even where the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage. To excuse the duty to defend, the petition must unambiguously exclude coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy. Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured.

Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Assn., Inc., 288 Ga. App. 355, 356, 654 S.E.2d 207 (2007) (citations and punctuation omitted; emphasis in original).

Rather than applying the standard in Fireman's Fund, Defendant employed a strained interpretation of the Guidant complaint to reach its conclusion that the claims asserted in the complaint were excluded by the D&O Policy. Defendant made its coverage decision based upon an allegation contained in paragraph 8 of the Guidant complaint. However, Defendant

focused on only sentence in paragraph 8 and ignored the balance of that

paragraph.   Paragraph 8 in the Guidant complaint alleges:

> Guidant Sales does not have a uniform price for CRM
> devices and other products, but rather tailors its pricing based on
> the mix of goods and services that Guidant Sales provides to its
> customers.  Generally, Guidant Sales will submit proposed prices
> to medical centers that state an "access" price and then offer
> discounts if the medical center will commit to a certain percentage
> market share for Guidant Sales' products.  The pricing information
> contained in Guidant Sales' proposals and contracts is confidential
> between Guidant Sales and the customer.  Guidant Sales' pricing
> information is a trade secret, which Guidant Sales takes reasonable
> measures to protect.

(Guidant Compl., Ex. C to Pl.'s Compl., DKT. No. [1-5] at ¶8).

Thus, as Defendant asserts, Guidant did allege in Paragraph 8 of its

Complaint that its pricing information was a trade secret.  However, it also

alleged in the preceding sentence that the pricing information was confidential

information.  This is a distinction that makes a difference.  Information can be

confidential yet not rise to the level of being a trade secret.  See TDS Healthcare

Sys. Corp. v. Humana, 880 F. Supp. 1572, 1584-85 (N.D. Ga. 1995) (discussing

distinction between trade secrets and confidential information).  Guidant pled in

the alternative that the pricing information was confidential information and/or that it was a trade secret.[5]

A review of the counts alleging the specific causes of action confirms this analysis. The first three counts of the Guidant complaint do not rely upon the pricing information being a trade secret. Those counts rely upon the allegation that the pricing information is confidential. Only Count IV relies upon a trade secret allegation.

Admittedly, paragraph 8 of the complaint is incorporated into each count of the complaint. However, the trade secret allegation is mere surplusage in Counts I-III. Plaintiff could prevail on each of those counts regardless of whether the pricing information was a trade secret. The Complaint could have been more clearly drafted by placing separate allegations in separate paragraphs.[6] Yet, Guidant chose to lump several factual allegations in each paragraph. The drafting style of the Plaintiff should not govern the question of coverage of the Defendant. When one actually analyzes the language of the

---

[5]"A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2).

[6]"A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

19

Guidant Complaint, the Court finds no ambiguity in concluding that causes of action are alleged that do not include trade secret allegations. Therefore, the exclusion in Paragraph III C(7) of the D&O Policy is not applicable.

The Guidant lawsuit was brought against Aspen II Holding Company, Inc., d/b/a Aspen Healthcare Metrics. Aspen II Holding Company, Inc. ("Aspen II") is not a subsidiary of MedAssets. The D&O Policy provided coverage for the Insured Organization which is defined as "the Parent Corporation and any Subsidiary created at any time or any Subsidiary acquired on or before the inception date." (D&O Policy, Ex. A to Compl., Dkt. No. [1-2], at II(H)). MedAssets does have a subsidiary named Aspen Healthcare Metrics, LLC ("Aspen LLC"), which purported to answer on behalf of Aspen II in the Guidant lawsuit and which also filed a counterclaim.

Federal did not identify the failure to properly name Aspen LLC in the Guidant lawsuit as a basis for its denial of coverage in its Notice to Plaintiff. However, in its present Motion, Defendant asserts that because Aspen II was not a subsidiary of MedAssets, Defendant's decision that no coverage existed under the D&O Policy was correct. The Court finds Defendant's argument unpersuasive. Aspen LLC was the party against whom Guidant intended to assert its claims. Aspen LLC participated in the litigation and reached a

20

settlement with Guidant. Aspen LLC, through MedAssets, communicated with Defendant about coverage and fully disclosed its participation in the Guidant lawsuit. Aspen LLC is a subsidiary of MedAssets and is entitled to coverage under the D&O Policy.

Based on the foregoing, the Court concludes that Defendant had a duty to defend under the D&O Policy.

### C. Limits of Defendant's Liability

In the event the Court found that Defendant had a duty to defend under the D&O Policy, Defendant seeks summary judgment on the limits of its liability. The D&O Policy provides that the Maximum Aggregate Limit of Liability of Defendant is $3.0 million. Because Plaintiff has not alleged bad faith or negligence on the part of Defendant in refusing to settle a claim within policy limits, Defendant asserts that its liability is limited to $3.0 million. In its response, Plaintiff asserts that it may be entitled to consequential damages as a result of breach of contract by Defendant regardless of any finding of bad faith on the part of Defendant.

Whether Defendant is liable for damages in excess of the policy limit is a jury question. Leader Nat'l Ins. Co. v. Smith, 177 Ga. App. 267, 279, 339 S.E.2d 321 (1985). "Damages growing out of a breach of contract, in order to

form the basis of a recovery, must be such as can be traced solely to the breach, must be capable of exact computation, must have arisen naturally and according to the usual course of things from such breach, and must be such as the parties contemplated as a probable result of the breach. If it was comprehended that the amounts above the policy limits fall within the 'consequential damages' category, they are not as a matter of law excluded as a measure of damages in contract actions." Id. (internal citations omitted); also see Ga. Farm Bureau Ins. Co. v. Martin, 264 Ga. 347, 350, 444 S.E.2d 739 (1994) ("When the plaintiff is the insured seeking to recover for the insurer's breach of its contractual duty to defend, there is a factual question whether the breach may have caused the plaintiff to be exposed to greatly increased liability to the injured party.").

Defendant points out that defense costs may reduce and exhaust the limits of liability in the D&O Policy. Plaintiff alleges that it spent over $7 million on defense costs which would obviously exceed the limits of liability. Thus, Defendant argues that it is entitled to a judgment finding its maximum liability under the D&O Policy is $3.0 million. However, because the parties have not had an opportunity to engage in discovery concerning damages, the Court finds that it would be premature for the Court to draw any conclusion on this issue at

this time.[7]  Therefore, Defendant's Motion for Summary Judgment [58] on the limit of liability is **DENIED**.

## II.     Discovery Motions

Plaintiff filed a Motion to Compel Production of Documents [24], a Motion to Compel Depositions [29-1], and a Motion for Sanctions [29-2].  The Court is cognizant that Plaintiff responded to both of Defendant's motions for summary judgment while discovery disputes were outstanding and did so under the contention that it could not fully and completely respond to the issues raised in Defendant's motions as a result.  However, the documents sought by Plaintiff and any evidence contained therein, while it may have been entitled to such, would not have changed the Court's decision on Defendant's motions for summary judgment which was based upon a plain reading of the two policies.  Furthermore, it is clear that Plaintiff at a minimum was entitled to depose Scott Dalton and James Butchart, if not other individuals that Defendant refused to make available.  Defendant's decision was at best risky and likely would have

_____

[7] In light of the costs already incurred in the Guidant lawsuit as well as this action, the parties are encouraged to confer in an effort to reach an agreement concerning Defendant's obligation.  Before proceeding with the expenses associated with discovery, the parties may request that the case be submitted to mediation.  If such a request is not made, the parties shall submit to the Court a proposed scheduling order for discovery on the issue of damages.

AO 72A
(Rev.8/82)

resulted in sanctions had the Court not been able to resolve the motions for summary judgment based on the language of the insurance policies. The Court having construed the policies based on their clear language, there is no need for additional depositions and sanctions will not be imposed.

Plaintiff's Motion to Compel Production of Documents [24], Motion to Compel Depositions [29-1], and Motion for Sanctions [29-2] are **DENIED AS MOOT**. Having denied Plaintiff's discovery motions, Defendant's corresponding motions are also moot. Therefore, Defendant's Motions for Protective Order [40, 40-2] are **DENIED AS MOOT**. Defendant's Motion to Quash [40-1] the Subpoena of Mr. Butchart is **GRANTED**. These rulings are without prejudice to either party's requests for damages discovery as authorized in Note 7, <u>supra</u>.

## III.    Remaining Motions

Plaintiff filed a Motion for Judicial Notice [52] moving the Court to take notice of: (1) Aspen's filing of Notice of Removal in the Guidant lawsuit; (2) Aspen's Answer in the Guidant lawsuit; and (3) the Minnesota District Court's order dismissing Counts II-IV of the Guidant lawsuit. Plaintiff's Motion for Judicial Notice [52] is **GRANTED** and the Court has taken notice of these three items.

Plaintiff also filed two motions for leave to correct the Rule 56(f) affidavits submitted in support of their responses to Defendant's motions for summary judgment. Plaintiff's Motions for Leave to Correct Rule 56(f) Affidavit submitted in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment under the D&O Policy [83] and under the E&O Policy [84] are **GRANTED**.

## Conclusion

For the aforementioned reasons, Plaintiff's Motion for Summary Judgment on the Issue of Defendant's Duty to Defend [54] is **GRANTED, in part** and **DENIED, in part**. The Motion is granted as to Defendant's duty to defend under to D&O Policy and denied as to Defendant's duty to defend under the E&O Policy. Defendant's Motion for Summary Judgment on Claims under the E&O Policy [57] is **GRANTED**. Defendant's Motion for Summary Judgment on Claims under the D&O Policy [58] is **DENIED**. Plaintiff's Motion to Compel Production of Documents [24], Defendant's Motion for Protective Order [30], Plaintiff's Motion to Compel Depositions [29-1], Plaintiff's Motion for Sanctions [29-2], and Defendant's Motion for Protective Order [40-2] are all **DENIED AS MOOT**. Defendant's Motion to Quash [40-

AO 72A
(Rev.8/82)

1] is **GRANTED**. Plaintiff's Motion for Judicial Notice [52] and Plaintiff's

Motions for Leave to Correct Rule 56(f) Affidavits [83, 84] are **GRANTED**.

      **SO ORDERED**, this _31st_ day of March, 2010.


**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)